**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CALEB CHO, *individually and on behalf of all others similarly situated*, | ) ) ) ) | CASE NO. 5:26-cv-886 |
| Plaintiffs, | ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) | |
| BABCOCK & WILCOX ENTERPRISES, INC., *et al.*, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) ) ) | |

This matter comes before the Court on the motion of Barry Jaye to be appointed lead plaintiff and for approval of his selection of lead counsel pursuant to 15 U.S.C. § 78u-4(a)(3). (Doc. No. 11 (Motion).) No others have sought to be appointed lead plaintiff or to have their selection of lead counsel approved.[1] Defendants Babcock & Wilcox Enterprises, Inc. ("B&W"), Kenneth M. Young, and Cameron Frymyer (collectively, "defendants") filed a response "to bring . . . threshold issues to the Court's attention[.]" (Doc. No. 15 (Response), at 4 n.5.)[2] For the reasons stated herein, Jaye's motion is DENIED.

## I.    BACKGROUND

This is a putative class action brought under sections 10(b) and 20(a) of the Securities

---

[1] The time for others to move for appointment as lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA") has expired. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (requiring motions for appointment as lead plaintiff to be filed within 60 days of publication of required notice); (Doc. No. 11-2 (Leiberman Decl.) ¶ 3 (averring that required notice was published on April 14, 2026).)

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Exchange Act of 1934. (Doc. No. 1 (Complaint) ¶ 1.) The claims stem from a contract procured by B&W, first announced on November 4, 2025, and then formally executed on March 4, 2026. (*Id.* ¶¶ 4, 11.) Plaintiff Caleb Cho alleges that, during this period, defendants made various false or misleading statements or omissions about this contract that artificially inflated the value of B&W securities. (*Id.* ¶¶ 14, 63.) Plaintiff further alleges that he and other class members purchased B&W securities at an artificially inflated price. (*Id.* ¶ 79.) As alleged, the value of B&W securities began to fall on March 12, 2026, when defendants' alleged misconduct came to light in a report (the "disclosing publication"). (*Id.* ¶¶ 15, 57.)

On April 14, 2026, Cho filed the complaint in this action on behalf of "all persons and entities other than [d]efendants that purchased or otherwise acquired B&W securities between November 5, 2025 and March 11, 2026" (the "Class Period"). (*Id.* ¶ 1.) That same day, notice of the putative class action was published on *ACCESS Newswire*. (Doc. No. 11-2 ¶ 3; Doc. No. 11-4 (Class Action Notice).) The notice advised purported class members of this action, the claims asserted, the purported class period, and that they had 60 days to seek to be lead plaintiff. (Doc. No. 11-4, at 1.) Jaye filed the present motion on June 15, 2026. (Doc. No. 11.)

## II.      LEGAL STANDARD

Section 78u-4(a)(3) governs the appointment of lead plaintiff and counsel in securities class actions. *See* 15 U.S.C. §§ 78u-4(a)(1), (a)(3). The statute provides that, within 20 days of filing a securities class action, the plaintiff must publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the action, the claims asserted, and the purported class period. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Purported class members then have 60 days from the date of publication to move to be appointed

2

lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Upon a motion, the court is to appoint as lead plaintiff the purported class member "the court determines to be most capable of adequately representing the interests of class members" (referred to as the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff is the person who: "(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted upon a showing that the movant "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Once the lead plaintiff is appointed, they may, "subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

## III.     DISCUSSION

As a preliminary matter, Jaye argues that defendants are not entitled to be heard on a motion to appoint a lead plaintiff. (Doc. No. 16 (Reply), at 3–4.) Federal courts disagree on whether a defendant may be heard on a § 78u-4(a)(3) motion, and "the Sixth Circuit has not opined on this issue[.]" *Bluestone v. Sadove*, No. 3:18-cv-63, 2018 WL 3374160, at *5 (E.D. Tenn. July 6, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 5973814 (E.D. Tenn. Nov. 14, 2018). The issue, however, is largely academic. Regardless of whether a defendant may be heard on a § 78u-4(a)(3) motion, the Court still has a duty, under the statute, to determine a potential lead plaintiff's adequacy for the role. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (directing courts to

3

"appoint as lead plaintiff the member or members of the purported plaintiff class that the *court determines* to be most capable of adequately representing the interests of class members" (emphasis added)). Whether the Court does this analysis with or without the benefit of opposition briefing makes little difference. *Cf. Bosch v. Credit Suisse Grp. AG*, No. 22-cv-2477, 2022 WL 4285377, at *6 (E.D.N.Y. Sept. 12, 2022) ("[I]t is well settled that the [c]ourt is obligated to evaluate the requirements of [§ 78u-4(a)(3)], even though [movant's] motion is unopposed." (collecting cases)). The Court can thus scrutinize Jaye's motion without deciding whether defendants have a right to be heard on it.

### a. *Procedural Requirements*

Moving on to the analysis, § 78u-4(a)(3)'s procedural requirements are met. The complaint was filed on April 14, 2026. (Doc. No. 1.) That same day, notice of the putative class action was published on *ACCESS Newswire*. (Doc. No. 11-2 ¶ 3; Doc. No. 11-4.) The notice advised purported class members of this action, the claims asserted, the purported class period, and that they had 60 days to seek to be lead plaintiff. (Doc. No. 11-4, at 1.) Jaye timely filed the present motion on June 15, 2026. (Doc. No. 11.)[3] Jaye has thus satisfied § 78u-4(a)(3)'s procedural requirements.

### b. *Substantive Requirements*

Jaye, however, fails to substantively set forth his adequacy under 15 U.S.C. § 78u-4(a)(3). As discussed below, Jaye fails to provide any basis for finding that he has "the largest financial interest in the relief sought" as required to establish presumptive adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Further, even if Jaye could establish presumptive adequacy, Jaye's own

---

[3] The Court notes that 60 days from the publication date, April 14, 2026, falls on June 13, 2026—a Saturday. By operation of Fed. R. Civ. P. 6(a), the deadline to seek appointment as lead plaintiff was thus June 15, 2026.

4

submissions show that he is "subject to unique defenses[,]" thus rebutting the presumption. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

### i. *Jaye Fails to Show Presumptive Adequacy*

District courts disagree on how to ascertain financial interest for purposes of presumptive adequacy under § 78u-4(a)(3). While "most courts agree that [the approximate losses suffered by the movant] is the most salient factor[,]" *Guzman v. Ford Motor Co.*, 801 F. Supp. 3d 706, 716 (E.D. Mich. 2025), courts disagree on what counts as a loss.

This disagreement concerns application of the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). *Dura* held that, to satisfy § 78u-4's causation requirement, "a plaintiff must show that the defendant's misconduct artificially inflated the price of the target company's stock . . . *and* that the stock price later declined (and thus caused the plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public." *Pio v. Gen. Motors Co.*, No. 14-cv-11191, 2014 WL 5421230, at *3 n.1 (E.D. Mich. Oct. 24, 2014) (citing *Dura*, 544 U.S. at 344–47 (emphasis in original)). In practice, *Dura* means that an investor typically cannot recover for losses on any securities sold *before* the challenged misconduct was disclosed. *Plagens v. Deckard*, Nos. 1:20-cv-2744, 1:23-cv-238, 2021 WL 3284265, at *8 (N.D. Ohio Aug. 2, 2021) (citing *Dura*, 544 U.S. at 345–46).

District courts in the Sixth Circuit disagree on whether to apply *Dura* in the financial interest analysis. *Compare Pio*, 2014 WL 5421230, at *3 (applying *Dura*), *and Plagens*, 2021 WL 3284265, at *8 (same), *with Owens v. FirstEnergy Corp.*, Nos. 2:20-cv-3785, 2:20-cv-4287, 2020 WL 6873421, at *7 (S.D. Ohio Nov. 23, 2020) (declining to apply *Dura*), *and Blitz v. AgFeed Indus., Inc.*, No. 3:11-cv-992, 2012 WL 1192814, at *4 (M.D. Tenn. Apr. 10, 2012) (same). Courts

5

that apply *Dura* at this stage only consider "losses incurred from sales occurring after disclosure[.]" *Kops v. NVE Corp.*, Nos. 06-cv-574, 06-cv-982, 06-cv-997, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006). Courts that do not apply *Dura* consider all losses suffered during the class period. *See, e.g., Owens*, 2020 WL 6873421, at *6–7.

This Court joins those applying *Dura* in the financial interest analysis. This result flows from the statute itself. Section 78u-4(a)(3) requires the Court to determine the plaintiff with "the largest financial interest *in the relief sought by the class*[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added). The Court does not see how it could determine one's financial interest in the relief sought without some reference to what relief is available under the law. *See Plagens*, 2021 WL 3284265, at *8 ("[I]t is difficult to see how approximating losses that a lead plaintiff may not recover as a matter of law . . . advances the statutory text . . . ."); *see also Peacock v. Dutch Bros, Inc.*, No. 23-cv-1794, 2023 WL 4976814, at *4 (S.D.N.Y. Aug. 3, 2023) ("Because the lead plaintiff should be the class member who stands to recover the most *from that litigation*, courts should consider only those losses that will actually be recoverable in the class action." (quotation marks and citations omitted) (emphasis in original)). This result also flows from the PSLRA's purpose. The statute was enacted to ensure that securities class actions were led by plaintiffs with real interest in the litigation and not by repeat-player law firms seeking "a windfall of attorney's fees[.]" *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 n.8 (E.D.N.Y. 2011) (quoting *Green v. Ameritrade, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002)). Turning a blind eye to legal limitations on recovery would risk appointing a lead plaintiff who has no recoverable interest in the action, contravening the statute's purpose. Thus, the analysis under § 78u-4(a)(3)(B)(iii)(I)(bb) must be conducted in light of background legal principles (like the Supreme Court's decision in

6

*Dura*) that define the bounds of recoverable damages.[4]

Jaye argues that *Dura* was decided on a motion to dismiss and is thus inapplicable at this stage. (Doc. No. 16, at 4); *see also Blitz*, 2012 WL 1192814, at *4 (distinguishing *Dura*, in part, on similar grounds). But *Dura*'s procedural posture does not mean the Supreme Court's clear pronouncement of law is any less applicable at the lead plaintiff stage. *See Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) ("Although *Dura* . . . involved the pleading standards for alleging loss causation, its reasoning has been extended to the context of a motion for appointment as lead plaintiff." (collecting cases)). The Court cannot simply ignore clear law on recoverable losses. To do so "would be [an] abdicat[ion] [of the courts'] responsibility under the PSLRA[.]" *Xu*, 2021 WL 3861454, at *7 n.13 (quotation marks and citation omitted).

Further, even though the Court holds that it must consider *Dura*, it need not partake in "[a]djudication of the [r]ecoverability of Jaye's [l]osses[,]" as Jaye fears. (Doc. No. 16, at 4.) The financial interest analysis is not a final adjudication of recoverability. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-3451, 2011 WL 566814, at *6 n.8 (N.D. Cal. Feb. 15, 2011) (citation omitted). Rather, the relevant inquiry is whether the movant presents *some evidence* of a financial interest that *could be* recoverable under applicable law.[5] *Cf. Cambridge Ret. Sys. v. Mednax, Inc.*,

---

[4] Additionally, it appears that most district courts outside of the Sixth Circuit apply *Dura* at the lead plaintiff stage. *See, e.g., Peacock*, 2023 WL 4976814, at *4 (citations omitted); *Xu v. FibroGen, Inc.*, No. 21-cv-2623, 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021) (citation omitted); *Soto v. Hensler*, 235 F. Supp. 3d 607, 615 (D. Del. 2017) (citations omitted), *adopted sub nom. In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2017 WL 5188057 (D. Del. Nov. 9, 2017); *but see Cook v. Allergn PLC*, Nos. 18-cv-12089, 18-cv-12219, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (noting that application of *Dura* at lead plaintiff stage is "subject to considerable dispute" (citations omitted)).

[5] Of course, if there were competing motions to be appointed lead plaintiff, the next inquiry would be which of the movants evinced the *largest* financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (identifying as presumptively most adequate lead plaintiff the one who, *inter alia*, the court determines to have "the *largest* financial interest in the relief sought by the class" (emphasis added)).

No. 18-cv-61572, 2018 WL 8804814, at *2 n.4 (S.D. Fla. Dec. 6, 2018) ("Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute *potential recoverable losses*[.]" (citation omitted) (emphasis added)), *report and recommendation adopted*, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018); *Emerson v. Genocea Biosciences, Inc.*, Nos. 17-cv-12137, 17-cv-12168, 17-cv-12474, 2018 WL 839382, at *3 n.2 (D. Mass. Feb. 12, 2018) (describing § 78u-4(a)(3) movant's burden of proof as "relatively low" (citations omitted)).

Looking to Jaye's submissions, he fails to make the requisite showing. The complaint in this action alleges a single disclosure—the March 12, 2026, disclosing publication. (Doc. No. 1 ¶ 15.) But Jaye's own submission shows that he sold all B&W securities *before* March 12, 2026. (Doc. No. 11-3 (Exhibit A to Lieberman Decl.), at 2; Doc. No. 11-5 (Exhibit C to Lieberman Decl.), at 4.) On the evidence presented, Jaye would not be able to recover for any losses suffered before the disclosing publication because, under *Dura*, he would be unable to establish causation for his losses. *See Kops*, 2006 WL 2035508, at *5 ("Under *Dura*[] principles . . . , [movant] has not suffered any loss as the result of [d]efendants' actions because [movant] sold all of his shares before the truth was revealed[.]"). Jaye thus fails to show a financial interest and presumptive adequacy. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 622 (S.D.N.Y. 2015) (holding movant did not have largest financial interest where movant "sold all its . . . shares prior to any corrective disclosure"); *cf. Bensley*, 277 F.R.D. at 241 (rejecting movant as lead plaintiff where movant "was a total in-and-out trader").[6]

Jaye, however, argues that he should be permitted to establish his financial interest and

---

[6] An "in-and-out trader" is one who "sold all of its shares prior to any revelation of fraud." *Bensley*, 277 F.R.D. at 237.

8

presumptive adequacy via a partial disclosure theory. Specifically, he argues that he should be permitted to pursue a theory that defendants' alleged misconduct was disclosed through a series of partial disclosures that decreased the value of his securities before he sold them. (Doc. No. 16, at 5–6.) Such a theory is viable under *Dura. See In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830, 2010 WL 5173851, at *10 (W.D. Tenn. Dec. 15, 2010) (citations omitted). The problem, however, is that the complaint does not plead any partial disclosures—it pleads only a single complete disclosure. (Doc. No. 1 ¶ 15.)

"Courts have grappled with whether or not to allow a proposed lead plaintiff to proceed under a [partial disclosure theory] that has not been supported by allegations in the complaint." *Galmi*, 302 F. Supp. 3d at 501 (collecting cases). As *Galmi* persuasively explains, courts permit potential lead plaintiffs to proceed on a partial disclosure theory not alleged in the complaint, if the theory is supported by facts alleged in the "declarations of the moving parties." *Id.* at 502 (citations omitted). If the potential lead plaintiff fails to provide any allegations of a partial disclosure, however, they may not proceed. *See Darish v. N. Dynasty Mins. Ltd.*, No. 20-cv-5917, 2021 WL 1026567, at *7 (E.D.N.Y. Mar. 17, 2021) ("[On § 78u-4(a)(3) motions,] courts have rejected in-and-out traders who failed to plausibly allege any partial disclosures to which they could tether their losses." (collecting cases)). Here, Jaye provides no allegations of a partial disclosure; he merely suggests that partial disclosures may have occurred and that, if they did, Jaye would be able to recover. (Doc. No. 16, at 6.) Without any factual allegations of a partial disclosure, Jaye may not proceed on a partial disclosure theory to establish his financial interest and presumptive adequacy under § 78u-4(a)(3)(B)(iii)(I).

Jaye thus fails to show his financial interest and, resultantly, his presumptive adequacy to

9

serve as lead plaintiff. Because Jaye fails to show any financial interest, the Court need not address whether Jaye otherwise satisfies Rule 23, as required under § 78u-4(a)(3)(B)(iii)(I)(cc).[7]

### ii.  Jaye is Subject to a Unique Defense

Even if the Court were to ignore *Dura* and hold that Jaye satisfied the requirements of presumptive adequacy, Jaye's own submissions rebut the presumption. The presumption is rebutted when a movant is "subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). A potential lead plaintiff who sells all of his securities before any alleged disclosure is subject to a unique defense. *See, e.g., Maliarov v. Eros Int'l PLC*, Nos. 15-cv-8956, 16-cv-223, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03-cv-2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003). As discussed above, Jaye's own submissions indicate that he sold all of his securities in B&W before the disclosing publication, and he fails to allege any partial disclosures prior to the sale of his securities. Jaye is subject to a unique defense, thus rebutting any presumptive adequacy he may have established.

### iii.  Jaye's Remaining Arguments are Unavailing

Jaye's remaining arguments fail. Jaye argues that the Court cannot deny his motion because § 78u-4(a)(3) mandates appointment of a lead plaintiff. (Doc. No. 16, at 9.) Section 78u-4(a)(3) uses the mandatory language "shall." 15 U.S.C. § 78u-4(a)(3)(B)(i). But it does not mandate the

---

[7] But the Court notes persuasive case law suggests that a potential lead plaintiff's sale of all securities before any disclosure of misconduct prevents a potential lead plaintiff from satisfying Rule 23. *See Topping*, 95 F. Supp. 3d at 622 n.16 ("Although [movant] fails in its ability to demonstrate the greatest financial interest, the Court also observes that [movant's] status as an in-and-out trader would render it an inappropriate lead plaintiff under the third prong of the PSLRA's evaluation of a potential lead plaintiff: that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." (collecting cases)).

10

appointment of just anyone as lead plaintiff. It only requires the Court to appoint as lead plaintiff someone "that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Absent such an individual, the statute imposes no mandate to appoint a lead plaintiff. *See Bosch*, 2022 WL 4285377, at *6 (rejecting argument that § 78u-4(a)(3) mandated appointment of lead plaintiff); *see also Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, No. 20-cv-12698, 2021 WL 2177078, at *1 (E.D. Mich. May 28, 2021) ("Although a motion for appointment as lead plaintiff and lead counsel may be unopposed, a court must evaluate the information before it and assess whether a party requesting appointment as lead plaintiff and their chosen counsel should serve in those capacities.").

Jaye also argues that denial of his motion would confuse, delay, or otherwise prejudice the adjudication of this action. (Doc. No. 16, at 10.) Any potential prejudice caused by denying Jaye's motion is outweighed by the potential prejudice of appointing as lead plaintiff one who is inadequate for the task. As discussed above, the purpose of the PSLRA was to ensure that securities class actions are led by plaintiffs with real interest in the litigation. *See Bensley*, 277 F.R.D. at 234 n.8 (citing *Green*, 279 F.3d at 595). Granting Jaye's motion, despite his failure to show his ability to adequately represent the class, would thus substantially prejudice this action. *See Bosch*, 2022 WL 4285377, at *7 ("[T]he members of the putative class would be prejudiced if the [c]ourt were to appoint a lead plaintiff who fails to satisfy Rule 23's adequacy requirement[.]" (citation omitted)).

\* \* \*

The Court recognizes that this order leaves the case without a lead plaintiff. But the Court's

denial of the present motion does not necessarily spell the end. First, this case can still be litigated on an individual basis. *Cf. In re Allergan PLC Sec. Litig.*, No. 18-cv-12089, 2020 WL 5796763, at *9 (S.D.N.Y. Sept. 29, 2020) (suggesting similar possibility after rejecting lead plaintiff as class representative at class certification stage). Second, the Court sees nothing in the statute that would prevent plaintiff (or any other potential class member) from refiling this class action and resetting the statutory deadline for seeking to be lead plaintiff. Finally, the Court *may* have authority to order the reissuance of the notice under 15 U.S.C. § 78u-4(a)(3)(A) and thus extending the time for potential lead plaintiffs to move for appointment.[8] *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) ("[S]ome courts have formally re-opened the lead plaintiff process by providing for a new notice and motion period." (citations omitted)). In the end, if no adequate lead plaintiff is willing to step up, "perhaps the case cannot be maintained as a class action[.]" *In re Cavanaugh*, 306 F.3d 726, 731 n.7 (9th Cir. 2002).

## IV.    CONCLUSION

Barry Jaye's motion for appointment as lead plaintiff and approval of selection of lead counsel (Doc. No. 11) is DENIED. The stay on case deadlines previously entered by the Court (07/16/2026 Order [non-document]) is hereby lifted. The Court further directs the parties to meet and confer and, within fourteen days of the date of this order, submit a joint status report. The joint status report should address (1) whether plaintiff intends to pursue this case individually, refile the class action, or move the Court to order reissuance of the notice under 15 U.S.C. § 78u-4(a)(3)(A); (2) if plaintiff intends to pursue this case individually, a proposed deadline for defendants to answer

---

[8] The Court does not rule on whether district courts have such authority. If plaintiff (or anyone else) moves this Court to order reissuance of the notice under 15 U.S.C. § 78u-4(a)(3)(A), the issue of the Court's authority to do so should be fully briefed.

or otherwise respond to the complaint; and (3) any other agreed proposals the parties deem appropriate to submit to the Court at this stage.

      **IT IS SO ORDERED**.

Dated: August 3, 2026

                                  **HONORABLE SARA LIOI**
                                  **CHIEF JUDGE**
                                  **UNITED STATES DISTRICT COURT**